United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

EVANS ANALYTICAL GROUP, INC., a
Delaware corporation, as successor in interest to
CAS-MI LABORATORIES, LLC, a Missouri
limited liability company,

                    Plaintiffs,

          v.

GREEN PLANT FARMS, LLC, a Florida
limited liability company; SHRI
THANEDAR, an individual; and DOES 1 to 20,
inclusive,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 12-CV-05023-LHK


ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

          This diversity action involves a dispute over the business purpose of a lease between

Plaintiff Evans Analytical Group, Inc. ("EAG"), as successor in interest to CAS-MI Laboratories,

LLC. ("CAS-MI"), (collectively, "Plaintiffs"), and Defendant Green Plant Farms, LLC ("Green

Plant"). Plaintiffs allege that Defendant Green Plant and Defendant Shri Thanedar ("Thanedar")

(collectively, "Defendants") intentionally interfered with the contractual relationship between EAG

and Green Plant, and thus seek declaratory relief, rescission of the lease, and resulting damages.

Defendants now move to dismiss Plaintiffs' Complaint for lack of personal jurisdiction, improper

venue, and failure to state a claim upon which relief can be granted. ECF No. 12. In the

alternative, Defendants move to transfer venue pursuant to 28 U.S.C. § 1404(a), and 28 U.S.C.

1

§ 1406(a). *Id.* The Court held a hearing on Defendants' Motion to Dismiss or, in the alternative, Motion to Transfer Venue on June 13, 2013. Having considered the arguments and submissions of the parties as well as the relevant law, the Court hereby GRANTS Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## I.     BACKGROUND

### A.     Factual Allegations

On July 1, 2009, landlord Green Plant and tenant CAS-MI, a Missouri Company, entered into a ten-year lease (the "Lease") for a commercial property located at 435/445 Joe Hall Drive, Ypsilanti, Michigan (the "Leased Premises"). *See* Compl. ¶ 10, ECF No. 1. Green Plant owns the Leased Premises. *See* Compl. ¶ 9. Under the Lease, CAS-MI is required to pay rent to Green Plant in equal monthly installments, *see* Compl. ¶ 12, and may only use the property for the sole purpose of "conduct[ing] a business of operating a contract analytical laboratory and/or a contract consulting organization," *see* Compl. ¶ 11. At the time that Green Plant and CAS-MI executed the Lease, Defendant Thanedar was the sole and managing member of landlord Green Plant and the Chief Executive Officer ("CEO") of tenant CAS-MI. *See* Compl. ¶¶ 13, 14.

In May of 2010, CAS-MI was forced into receivership by Bank of America because CAS-MI, as well as two other companies also owned and controlled by Thanedar, constituted collateral for a defaulted loan to fund another company owned and controlled by Thanedar. *See* Compl. ¶ 15. In April of 2011, EAG purchased CAS-MI and the two other companies through a receivership in Missouri. *See* Compl. ¶ 16; *see also* Decl. Shri Thanedar Supp. Defs.' Mot. to Dismiss ("Thanedar Decl."), ECF No. 12-3 (Receivership letter).[1] As part of this purchase, CAS-MI assigned all of its rights and obligations under the Lease with Green Plant to EAG. *Id.*

At or around the time that EAG purchased CAS-MI, three former CAS-MI employees— Michele L. Bruck, Evan Boyst, and Sam Costello (collectively, the "Key Employees")—chose to continue to work for EAG after EAG acquired CAS-MI. *See* Compl. ¶ 17. In connection with

---

[1] Under the "incorporation by reference" doctrine, a district court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks and citations omitted) (alteration in original).

Case No.: 12-CV-05023-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1   their transition from CAS-MI employees to EAG employees, the Key Employees executed

2   Employee Proprietary Information and Assignment of Inventions Agreements ("the Agreements"),

3   which prohibited the Key Employees from using or disclosing confidential information of EAG.

4   *Id.*

5          During the summer of 2012, Thanedar allegedly actively recruited the Key Employees to

6   join Thanedar's new company, Avomeen, which is based in Michigan and is a direct competitor

7   with EAG.  *See* Compl. ¶¶ 18, 19, 32, 42.  In August of 2012, the Key Employees left EAG and

8   joined Avomeen.  *See* Compl. ¶ 42.  As a result of the loss of these employees, EAG now alleges

9   that Thanedar has frustrated and disrupted EAG's ability to use the lease to conduct its business.

10  *See* Compl. ¶ 22.  Accordingly, EAG claims that it is unable to make its lease payments from the

11  business operations that were intended to be conducted on the Property.  *See* Compl. ¶ 23.  As

12  such, EAG now seeks a declaratory judgment against Green Plant that the Lease is cancelled.  *See*

13  *id.* at 8.  In addition, EAG brings a cause of action against Defendant Green Plant for rescission of

14  the Lease for frustration of purpose, and brings a cause of action against Defendant Thanedar for

15  intentional interference with contractual relationship.  *See id.*

16      **B.     Procedural History**

17          EAG initiated this action on September 26, 2012.  ECF No. 1.  Defendants then filed the

18  instant Motion to Dismiss or, in the Alternative, Motion to Transfer, *see* Defs.' Mot. to Dismiss

19  ("Mot."), ECF No. 12, as well as a Request for Judicial Notice in Support of the Motion, ECF No.

20  11.[2]  Plaintiffs filed a timely opposition to the Motion to Dismiss, *see* Pls.' Opp'n to Mot. to

21  Dismiss ("Opp'n"), ECF No. 16, as well as evidentiary objections and a request to strike testimony,

22

23  [2]  Pursuant to Federal Rule of Evidence 201, Defendants request that the Court take judicial notice
    of a document filed in an action pending in the United States District Court of the Eastern District
24  of Missouri, entitled *Bank of America v. Analytics, Inc., et al.*, Case No. 10-00563, from which
    EAG acquired rights in the Leased Premises.  A matter may be judicially noticed if it is either
25  "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and
    ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed.
26  R. Evid. 201(b).  Courts can generally take judicial notice of other court proceedings as they are
    matters of public record.  *See Del Puerto Water Dist. v. United States Bureau of Reclamation*, 271
27  F. Supp. 2d 1224, 1233 (E.D. Cal May 13, 2003).  Accordingly, the Court GRANTS Defendants'
    Request for Judicial Notice.  However, the Court does not take judicial notice of any facts in the
28  public record that are "subject to reasonable dispute."  *See Lee v. City of L.A.*, 250 F.3d 668, 688-
    89 (9th Cir. 2001).

3

Case No.: 12-CV-05023-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

ECF No. 16-1.[3]  Defendants filed a timely reply, ECF No. 17 ("Reply"), as well as a response to Plaintiffs' evidentiary objections, ECF No. 17-5.

## II.     DISCUSSION

Defendants first contend that this action should be dismissed for lack of personal jurisdiction.  In a motion challenging personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  When the motion to dismiss constitutes a defendant's initial response to the complaint, the plaintiff need only make a prima facie showing that personal jurisdiction exists.  *See Data Disc, Inc. v. Systems Tech Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  While a plaintiff cannot "'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), and citing *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996)).

To determine the propriety of asserting personal jurisdiction over a nonresident defendant who has not consented to suit there, the Court examines whether such jurisdiction comports with the applicable state's long-arm statute and is permitted by the demands of federal due process. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011).  As the Supreme Court explained in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  *Id.* at 471-72 (quoting

---

[3]  EAG objects to and moves to strike the evidence contained in paragraph 13 of the Declaration of Shri Thanedar ("Thanedar Decl."), ECF No. 12-1, as well as the Motion at 10:26-27.  ECF No. 16-1.  EAG objects, pursuant to Rule 602 of the Federal Rules of Evidence, due to Thanedar's lack of personal knowledge/foundation.  *See* Evid. Objections & Request to Strike Testimony Supp. Pl.'s Opp'n to Defs.' Mot. to Dismiss, Opp'n, Ex. 1, ECF No. 16-1.  However, pursuant to Civil Local Rule 7-3(a), "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum."  As EAG failed to comply with the Civil Local Rules for objections, the Court disregards EAG's evidentiary objections and request to strike.

Case No.: 12-CV-05023-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1    *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  "By requiring that individuals

2    have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign

3    sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows

4    potential defendants to structure their primary conduct with some minimum assurance as to where

5    that conduct will and will not render them liable to suit."  *Id.* at 472.

6          As California's long-arm statute, California Civil Procedure Code § 410.10, is coextensive

7    with federal due process requirements, the jurisdictional analyses under state law and federal due

8    process are the same.  *See* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise

9    jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

10   States.").  Consequently, "[f]or a court to exercise personal jurisdiction over a nonresident

11   defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that

12   the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"

13   *Schwarzenegger*, 374 F.3d at 800 (quoting *International Shoe Co.*, 326 U.S. at 316).

14         A court may exercise either general or specific jurisdiction over a nonresident defendant.

15   *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).  General jurisdiction exists where a

16   nonresident defendant's activities in the state are "continuous and systematic" such that said

17   contacts "approximate physical presence in the forum state."  *Schwarzenegger*, 374 F.3d at 801

18   (internal quotation marks and citations omitted).  Where general jurisdiction is inappropriate, a

19   court may still exercise specific jurisdiction where the nonresident defendant's "contacts with the

20   forum give rise to the cause of action before the court."  *Doe v. Unocal Corp.*, 248 F.3d 915, 923

21   (9th Cir. 2001) (per curiam).

22         Here, EAG does not contend that the Court has general jurisdiction over Defendants.

23   Rather, EAG asserts that it has made the requisite *prima facie* showing of jurisdictional facts

24   supporting specific jurisdiction.  *See* Opp'n at 5.  To determine whether a defendant's contacts with

25   the forum state are sufficient to establish specific jurisdiction, the Ninth Circuit employs a three-

26   part test:

27         (1) The non-resident defendant must purposefully direct his activities or
             consummate some transaction with the forum or resident thereof; or perform
28           some act by which he purposefully avails himself of the privilege of conducting

**United States District Court**
For the Northern District of California

5

1    activities in the forum, thereby invoking the benefits and protections of its laws;

2    (2) the claim must be one which arises out of or relates to the defendant's forum-
        related activities; and

3

4    (3) the exercise of jurisdiction must comport with fair play and substantial justice,
        i.e. it must be reasonable.

5    *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  A

6    plaintiff bears the burden of satisfying the first two prongs.  *CollegeSource, Inc. v. AcademyOne,*

7    *Inc.,* 653 F.3d 1066, 1076 (9th Cir. 2011).  If a plaintiff does so, then the burden shifts to the

8    defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be

9    reasonable." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476-78).

10       The first prong is satisfied by either purposeful availment or purposeful direction.  *Brayton*

11   *Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).  For suits sounding in

12   contract, courts typically apply the "purposeful availment" test, which asks whether the defendant

13   has "performed some type of affirmative conduct which allows or promotes the transaction of

14   business within the forum state.'"  *Sher*, 911 F.2d at 1362 (quoting *Sinatra v. Nat'l Enquirer, Inc.*,

15   854 F.2d 1191, 1195 (9th Cir. 1988)).  By contrast, for cases involving tortious conduct, courts

16   most often employ a purposeful direction analysis, which asks whether the defendant has

17   "'purposefully direct[ed] his activities' at the forum state, applying an 'effects' test that focuses on

18   the forum in which the defendant's actions were felt, whether or not the actions themselves

19   occurred within the forum.'"  *CollegeSource*, 653 F.3d at 1077 (quoting *Yahoo! Inc. v. La Ligue*

20   *Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

21       **A.    Personal Jurisdiction Over Defendant Thanedar**

22       EAG claims that Defendant Thanedar intentionally interfered with a contractual

23   relationship, which is an allegation that sounds in tort.  Thus, the Court analyzes EAG's allegations

24   against Defendant Thanedar under the purposeful direction test.

25       The Ninth Circuit evaluates purposeful direction using the three-part "*Calder*-effects" test.

26   *See Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  Under this

27   test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at

28   the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

6

state." *Yahoo! Inc.,* 433 F.3d at 1206 (internal quotation marks and citations omitted). The Ninth

Circuit construes "intent" as "referring to an intent to perform an actual, physical act in the real

world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*,

374 F.3d at 806. In addition, "[t]here is no requirement that the defendant have any physical

contacts with the forum." *Brayton Purcell*, 606 F.3d at 1128.

   While EAG contends that all three elements are satisfied, Defendants dispute that EAG has

met its burden of establishing the second element of the "*Calder-effects*" test, that Defendant

Thanedar expressly aimed his conduct at California. *See* Reply at 3. In terms of the "express

aiming" element, the Ninth Circuit has held that "something more" is required to give rise to

specific jurisdiction than simply "a foreign act with foreseeable effects in the forum state."

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (citing

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000), which held

that "'something more' is what the Supreme Court described as 'express aiming' at the forum

state" in *Calder*). As the Supreme Court explained in *Burger King Corp. v. Rudzewicz*, "the

foreseeability of causing *injury* in another State . . . is not a 'sufficient benchmark' for exercising

personal jurisdiction. Instead, the foreseeability that is critical to due process analysis . . . is that

the defendant's conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there." *Id*. at 474 (internal quotation marks and citations omitted).

Thus, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant

cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla*, 357 U.S. 235,

253 (1958).

   Based on EAG's complaint and the parties' affidavits, the Court does not find that EAG has

satisfied the "express aiming" requirement to establish personal jurisdiction over Defendant

Thanedar. First, no physical ties can be attributed to Defendant Thanedar aside from a few trips to

California that were not related to Green Plant or EAG. *See* Thanedar Decl. ¶ 33, ECF No. 12-1.

Defendant Thanedar does not live in California, does not own a bank account in California, and

does not own property in California. *See* Thanedar Decl. ¶¶ 20, 32. Further, the Complaint alleges

that Thanedar's improper recruitment of the Key Employees took place at EAG's *Michigan* facility

7

resulting in EAG's inability to operate a contract analytical laboratory and/or a contract consulting organization at the Leased Premises in Michigan as required by the Lease. *See* Compl. ¶¶ 17-20, 22-23, 26, 32, 41-44. While EAG may have felt the effect of this allegedly wrongful recruitment in California, as EAG's principal place of business is located in Sunnyvale, California, the Supreme Court has stated clearly that this is "not a 'sufficient benchmark' for exercising personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 474 (quoting *World-Wide Wolkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Furthermore, although the Ninth Circuit has repeatedly held that "the 'express aiming' requirement is satisfied, and specific jurisdiction exists, when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant *knows* to be a resident of the forum state," *Washington Shoe Co.*, 704 F.3d at 675 (emphasis added), nowhere in the complaint does EAG allege that Thanedar knew that EAG's principal place of business is in California. Thus, EAG's Complaint does not set forth a sufficient basis for finding that Defendant Thanedar purposefully directed his activities at California such that "he should [have] reasonably anticipate[d] being haled into court []here." *Burger King Corp.*, 471 U.S. at 474, 475-76.

Therefore, the Court does not find that EAG has satisfied the *Calder-effects* test for establishing purposeful direction. Accordingly, EAG has failed to sustain its burden of making a *prima facie* case for the assertion of specific jurisdiction over Defendant Thanedar.

### B.    Personal Jurisdiction Over Defendant Green Plant

EAG also brings two causes of action against Defendant Green Plant, which arise out of EAG's contractual relationship with Green Plant. First, EAG seeks a declaratory judgment that the Lease is cancelled. *See* Compl. ¶¶ 24-29; *id.* at 8. Second, EAG seeks rescission of the Lease for frustration of purpose. *See* Compl. ¶¶ 30-37; *id.* at 8. However, when a dispute arises out of a contractual relationship, "the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." *Sher*, 911 F.2d at 1362; *see Burger King Corp.*, 471 U.S. at 478 ("[A]n individual's contract with an out-of-state party *alone* can[not] automatically establish sufficient minimum contacts in the other party's home forum."). "Instead, [a court] must look to 'prior negotiations and contemplated future consequences, along with the

8

United States District Court
For the Northern District of California

1   terms of the contract and the parties' actual course of dealing' to determine if the defendant's

2   contacts are '*substantial*' and not merely 'random, fortuitous, or attenuated.'" *Sher*, 911 F.2d at

3   1362 (quoting *Burger King Corp.*, 471 U.S. at 479, 480).

4        In determining whether EAG has met its burden of establishing that personal jurisdiction

5   exists over Green Plant, the Court finds persuasive the Ninth Circuit's reasoning in *Sher v.*

6   *Johnson*, 911 F.2d 1357 (9th Cir. 1990).  First, in *Sher*, the Ninth Circuit applied the purposeful

7   availment test rather than purposeful direction test because, "[a]lthough some of [plaintiff's] claims

8   sound[ed] in tort, all ar[o]se out of [plaintiff's] contractual relationship with the defendants." *Sher*,

9   911 F.2d at 1362.[4]  Second, in assessing whether the Court had personal jurisdiction over

10  defendants in *Sher*, the Ninth Circuit considered certain factors which have direct relevance to the

11  arguments set forth by EAG in this case.  Specifically, in *Sher*, the Ninth Circuit analyzed whether

12  jurisdiction existed by virtue of the following contacts: (1) the execution of a retainer agreement

13  between defendants, a Florida law firm, and the plaintiff in California; (2) defendants' acceptance

14  of payment from a California bank; (3) defendants' phone calls and letters directed to California;

15  (4) defendants' visits to California related to the legal representation; (5) the execution of a deed of

16  trust in favor of defendants on real estate located in California; and (6) appointment of a defendant

17

18  [4]  In Defendants' Motion to Dismiss, Defendants rely on cases involving the purposeful availment
    test to contest personal jurisdiction over Green Plant.  *See* Mot. at 8 (citing *Boschetto v. Hansing*,
19  539 F.3d 1011, 1017 (9th Cir. 2008), *Burger King Corp.*, 471 U.S. at 478, and *Cybersell, Inc. v.*
    *Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)).  However, in Defendants' Reply, Defendants
20  argue that "EAG has failed to sustain its burden of establishing that Defendants expressly aimed
    their conduct at California," Reply at 3, which is part of the purposeful direction test.  During the
21  hearing, Defendants stated that precisely which test should apply to Green Plant was unclear
    because of EAG's allegations of tortious conduct by Defendant Thanedar.  EAG urges this Court to
22  apply the purposeful direction test to Green Plant—which is an easier test for a plaintiff to
    satisfy—but in so doing relies on *Burger King Corp.*, see Opp'n at 6, in which "the Supreme Court
23  explained its approach to the purposeful availment requirement," *Gatz Capital Corp. v. Fifth Third*
    *Bank*, No. 99-3568, 1999 WL 1244147, *2 (N.D. Cal. Dec. 10, 1999).  The Court finds that the
24  purposeful availment test is more appropriate to its determination of jurisdiction over Green Plant
    in light of the fact that EAG's claims against Green Plant are based on Green Plant's interstate
25  contractual relationship with EAG.  As set forth in *Sher*, disputes that sound in contract are
    generally subject to the purposeful availment test for personal jurisdiction.  *See Sher*, 911 F.2d at
26  1362.  Moreover, EAG has failed to articulate why Green Plant should be liable for Defendant
    Thanedar's allegedly tortious actions when operating in his capacity as CEO of Avomeen not
27  Green Plant.  Thus, in assessing whether EAG has alleged sufficient contacts to establish
    jurisdiction over Green Plant, the Court relies on the Supreme Court's reasoning in *Burger King*
28  *Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and the Ninth Circuit's reasoning in *Sher v. Johnson*, 911
    F.2d 1357 (9th Cir. 1990).

Case No.: 12-CV-05023-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1    as an agent to hold the deed in California, sufficed to create jurisdiction.  Importantly, the Ninth

2    Circuit held that "accept[ing] payment from a California bank [as an incident of the legal

3    representation], ma[king] phone calls and sen[ding] letters to California," did not, by themselves,

4    "establish purposeful availment."  911 F.2d at 1361, 1362.  In so doing, the Ninth Circuit reasoned

5    that these contacts did not suffice to create a "substantial connection" with California because

6    defendants did not undertake "any affirmative action to promote business within California."  *Id*. at

7    1362.  In contrast, the Ninth Circuit held that execution of a deed of trust in favor of defendants

8    which encumbered California real estate, in addition to defendants' calls, letters, and trips to

9    California, collectively satisfied the purposeful availment test as these acts demonstrated that the

10   defendants "invoke[ed] the benefits and protections' of the laws of California for purposes of

11   jurisdiction."  *Sher*, 911 F.2d at 1363-64 (citing *Burger King Corp.*, 471 U.S. at 479, 475).

12        In contrast to *Sher*, the Court does not find that EAG has made sufficient allegations to

13   demonstrate that Green Plant "invoke[ed] the benefits and protections' of the laws of California for

14   purposes of jurisdiction."  *Sher*, 911 F.2d at 1363-64.  Green Plant is a Florida limited liability

15   company with its principal place of business in Michigan.  *See* Thanedar Decl. ¶ 6.  Green Plant

16   has never owned real estate in California, never registered to do business in California, never done

17   business in California, never had a bank account in California, never had any employees located in

18   California, and never made a contract in California.  *See* Thanedar Decl. ¶¶ 22, 24, 25, 27, 29.

19   Green Plant also has never had a website or sold any products online to California residents.  *See*

20   Thanedar Decl. ¶¶ 23, 30; *cf. Burger King Corp.*, 471 U.S. at 473 (holding that a "a publisher who

21   distributes magazines in a distant State may fairly be held accountable in that forum for damages

22   resulting there from an allegedly defamatory story").  While Green Plant did receive rent checks

23   from EAG which were mailed from California, this Court—like the Ninth Circuit in *Sher*—does

24   not find that this, in and of itself, constitutes a "deliberate creation of a 'substantial connection'

25   with California."  *Sher*, 911 F.2d at 1362 (holding that Florida defendants' acceptance of payment

26   from a bank in California was not sufficient to establish jurisdiction).  Notably, the transactions

27   giving rise to EAG's claims all took place in Michigan or Missouri.  EAG bought the lease rights

28   out of receivership in *Missouri*.  ECF No. 12-2.  The lease rights relate to property in *Michigan*.

10

Compl. ¶ 9.  The alleged recruitment of Key Employees took place in *Michigan*.  Thus, it does not appear that Green Plant took any "affirmative action to promote business within California," *Sher*, 911 F.2d at 1362, which would support finding jurisdiction.

Further, to the extent that EAG asserts that personal jurisdiction over Green Plant is created by virtue of Thanedar's alleged actions, the Court is not persuaded.  First, for the reasons set forth above, EAG's Complaint does not set forth a sufficient basis for finding that Thanedar purposefully directed his activities at California.  *See supra* Part II.A.  Thus, even if, "[f]or purposes of personal jurisdiction, the actions of an agent are attributable to the principal," *Sher*, 911 F.2d at 1362, the insufficiency of Thanedar's alleged actions to confer jurisdiction over him as an individual are likewise insufficient to confer jurisdiction over Green Plant as a limited liability company.  Moreover, the Complaint alleges that Thanedar was acting "in his capacity as CEO of Avomeen," which is based in Michigan, when he allegedly "took the Key Employees from EAG." Compl. ¶ 32.  Consequently, there is even less of a basis to impute Thanedar's actions onto Green Plant.

As the Supreme Court stated in *Burger King Corp.*, "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit the burdens of litigation in that forum as well."  471 U.S. at 475-76 (internal citations omitted).  EAG has not met its burden of demonstrating that Green Plant has "deliberately engaged in significant activities" within California, or has created "continuing obligations" between itself and California residents such that Green Plant's activities can be said to be "shielded by the benefits and protections" of California's laws.  Therefore, the Court does not find that EAG has sustained its burden of making a *prima facie* case for the assertion of specific jurisdiction over Defendant Green Plant.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).  In light of this finding, the Court need not address the other bases for which Defendants argue that EAG's Complaint should be dismissed.

Case No.: 12-CV-05023-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

### III.    LEAVE TO AMEND

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . .  [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

The Court hesitates to afford EAG leave to amend the Complaint as many of the statements made during the hearing on this Motion left the Court with the distinct impression that EAG filed its Complaint for leverage to terminate the Lease early.  Importantly, on July 12, 2012, EAG announced its decision to consolidate its Michigan operation with its Missouri operation.  *See* Thanedar Decl., Ex. C (showing that, on July 12, 2012, EAG announced that "EAG Coatings Solutions, formerly CAS-MI Laboratories, is moving to Missouri to join sister company CHEMIR.").[5]  Thus, it appears that EAG decided to move its operation out of Michigan, and consequently no longer needed the Lease, even before Defendant Thanedar allegedly "recruited and retained the Key Employees from EAG in August 2012."  *See* Compl. ¶ 42.  Further, on the same day that EAG filed its Complaint, EAG sent Defendants a letter enclosing a courtesy copy of the Complaint and requesting that Green Plant agree to a rescission of the Lease with an effective date of September 30, 2012, in exchange for dismissal of the Complaint.  *See* ECF No. 12-5.  Defendant Thanedar contends that, prior to this time, no one affiliated with EAG "contacted [him] or Green Plant to inform [them] that EAG believed [Defendants'] actions frustrated the business purpose of the Lease or attempted to negotiate a buyout of EAG's obligations under the Lease."

---

[5]  The Court takes judicial notice of this document pursuant to Federal Rule of Evidence 201(b), as this exhibit "is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

*See* Thanedar Decl. ¶ 15.  In light of this chronology of events, the Court finds reason to suspect that Defendants are correct when they characterize this lawsuit as merely "an attempt by EAG to manufacture a dispute with Defendants to gain settlement leverage." Mot. at 10.

Further, although the Court does not rule on Defendants' Motion for Improper Venue and/or Motion to Transfer in light of the Court's determination that it does not currently have jurisdiction over Defendants, the Court notes that several factors identified in the parties' briefs and during the hearing indicate that Michigan, and perhaps even Missouri, are far more appropriate venues for this action.  For example, all of the events that gave rise to the alleged disruption of EAG's business relationship with Green Plant—including the recruitment of Key Employees from CAS-MI to Avomeen—occurred in Michigan.  *See* Compl. ¶¶ 9, 17, 19.  In addition, Green Plant's principal place of business is located in Michigan.  Thanedar Decl. ¶ 6.  Thanedar resides in Michigan.  *Id.* ¶ 20.  The Key Employees live and work in Michigan.  *See* FAC ¶¶ 3, 19, 22, 32; Thanedar Decl. ¶ 34.  EAG conducted business operations in the Leased Premises in Michigan from March 31, 2011, to at least July 31, 2012.  Opp'n at 6; Reply at 7.  Further, in April of 2011, EAG purchased CAS-MI and the two other companies through a receivership in Missouri.  *See* Compl. ¶ 16; *see also* Thanedar Decl., ECF No. 12-3 (Receivership letter).

Thus, while the Court ultimately decides to afford EAG leave to amend, the Court strongly suggests that EAG evaluate the merits of its case before filing an amended complaint.

## IV.    CONCLUSION

The Court hereby GRANTS without prejudice Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).  Should EAG elect to file a Second Amended Complaint curing the deficiencies discussed herein, EAG shall do so within 21 days of the date of this Order.  Failure to meet the 21 day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice.   EAG may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

*//*

Case No.: 12-CV-05023-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

1

Dated: July 29, 2013

LUCY H. KOH
United States District Judge

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

Case No.: 12-CV-05023-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS